180 So. 640

STATE v. PEPPER.

No. 34678.

April 4, 1938.

S. R. Thomas, of Natchitoches, and James A. Horton, of Coushatta, for appellant.

Gaston L. Porterie, Atty. Gen., James O'Connor, Asst. Atty. Gen., H. L. Hughes, Dist. Atty., of Natchitoches, and H. W. Bethard, Jr., Sp. Counsel, of Coushatta, for the State.

PONDER, Justice.

The defendant, a girl 18 years of age, was convicted of manslaughter, the jury

recommending the extreme mercy of the court, and sentenced to not less than 6 months and not more than 18 months in the penitentiary.

During the trial ten bills of exceptions were taken to the rulings of the court by the defendant's counsel.

The one presenting the most serious questions is bill of exception No. 10. This was a bill taken to the overruling of the defendant's motion for a new trial. Articles 3 and 4 of the motion reads:

"That approximately one hour after said case had been submitted to the Jury, the said jury was permitted to go to the scene of the alleged crime; that such was tantamount to the introduction of additional evidence; that the accused was not present with said jury, nor the judge, nor the district attorney during the time said jury viewed the alleged scene of the alleged crime; that the defendant was thereby deprived of her constitutional right to be present, and that such right could not be waived; that such action was prejudicial to defendant, and did her an irreparable injury.

"That after the jury had been deliberating for several hours, word was communicated to them from some source that if they found the defendant guilty as charged and "begged the extreme mercy of the Court the sentence would be from one day to eighteen months; that the jury at such time was in a 'dead lock', and that such information caused them to render a verdict of guilty; that such information so communicated to the jury, irrespective of the source from which it emminated was illegal, grossly prejudicial to the defendant, and did her irreparable injury."

Upon examination of the record we find that two of the jurors who served on the trial of the case were called and testified at the hearing of the motion for a new trial. Both jurors testified, over the objection of the district attorney, to the effect that they had, while members of the jury, and the other members of the jury had, received information that if they rendered a verdict of guilty as charged recommending the extreme mercy of the court that the sentence would be from 1 day to 18 months. One juror was asked if that influenced his verdict and he answered, "No." The other juror was not asked this question. Neither of the jurors were asked who transmitted the information.

The judge in his per curiam with reference to this states:

"As to the alleged error or misconduct set forth in paragraph 'D' of the defendant's petition for a new trial, it will be seen by the evidence taken on the petition that the defense has not shown specifically by whom and where the alleged communication to the jury were made. The testimony of the jurors, as witnesses, negatives influence or prejudice of the jury. The evidence shows only. a general statement. There is a presumption that the jury has performed its duty, and that such duty was performed without molestations. The proof to show otherwise must be clear and convincing. Any testimony that the Court has been guilty of misconduct or dereliction of duty comes with indifferent grace.

This alleged error is without backing, therefore overruled."

Without going into the question of the admissibility of this testimony on the ground that it would permit a juror to impeach his verdict, or, the question that even though the evidence was inadmissible after being admitted and coming to the knowledge of the court whether subdivision 5 of article 509 of the Code of Criminal Procedure would apply, which reads:

"Whenever, though as a matter of legal right the accused may not be entitled to a new trial, yet the judge is of the opinion that the ends of justice would be served by the granting of a new trial."

We will pass to article 4 of the motion.

The judge in his per curiam with reference to article 4 of the motion states:

"The Jury, after having deliberated for about an hour, came into Court in the custody of the Sheriff and asked that they be permitted to visit the scene of the shooting. The counsel for the defendant stated that he would be glad to have the jury visit the said scene. The Court ruled that the defendant, accompanied by her counsel be present at the time the jury viewed the said scene; and that thereupon the counsel for the defendant said in open court that it was the desire of the defense that the defendant be not made to be present. The defendant was given the right to be present but such right was waived and by such waiver the defendant can not take advantage of not being present and, further that such act was not prejudicial and did not do her irreparable injury. The de-

fendant asked that the jury visit the scene and ask not to be requested to be present. Furthermore, if the defendant were right in her contentions, she has waited too long to take advantage of the error. Such objection now is unfair to the State and to the Court. No objection was urged at the time nor after the jury returned to the Courthouse. The defendant should have reserved a bill of exception at the time the alleged error was committed. The objection now comes too late."

The minutes of the court read:

"This case was continued from Friday, November 6th 1937, and the polling of the jury was waived by counsels on both sides, whereupon counsels on both sides announced ready to proceed with trial. Trial continued until the conclusion of evidence. The Jury was duly charged by the Court, according to law, and was placed in the hands of the Sheriff, when they retired to their room to deliberate on a verdict.

"Now comes the Jury into open Court, in the presence of the accused, and asked the Court's permission to go to the scene of the killing, which was granted by the Court with the consent of Counsels for the State and Counsels for the accused, and it was agreed by the Court and counsels on both sides that the Judge, Sheriff, District Attorney, and Leading counsel for the defense should accompany the Jury to the scene of the killing, and on their return to the Court building from the scene of the killing, the Jury retired to the Jury room to continue their deliberations."

The minutes of the court show that it was the counsel for both sides who con-

sented to the jury being taken to the scene. It does not state that the accused consented or waived her presence and there is nothing in the minutes from which you could even infer that she did so. It is true that the judge in his per curiam states that the defendant consented. However the minutes must govern.

In the case of State v. O'Day, 188 La. 169, 175 So. 838, we held to the effect that viewing the scene was the taking of evidence.

After argument begins the trial judge cannot reopen a case to receive evidence. He has the discretion to do so any time prior to the argument but when argument begins his discretion ends. It was held to this effect in the cases of State v. Scott, 163 La. 25, 111 So. 483, and State v. Paul, 39 La.Ann. 329, 1 So. 666.

Futhermore, it is well settled that the minutes must show that the accused was present at every important stage of the trial for a felony from the moment of his arraignment to his sentence. State v. Futrell, 159 La. 1093, 106 So. 651; State v. Christian, 30 La.Ann. 367; State v. Ford, 30 La.Ann. 311; State v. Davenport, 33 La.Ann. 231; State v. Thomas, 128 La. 813, 816, 55 So. 415.

The failure of the defendant to except at the time does not affect the question here.

In the case of State v. Thomas, supra, this court approved this doctrine.

" 'That which the law makes essential, in the deprivation of life and liberty, cannot be dispensed with, or affected by, the consent of the accused; much less by his mere failure, when on trial and in custody, to object to unauthorized methods.' Hopt v. People of Utah, 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. [262] 265."

For the reasons assigned, the verdict and sentence are annulled, and a new trial granted.